## SIPHERD v. SIPHERD.

No. 5288.   Decided December 20, 1933.   (27 P. [2d] 801.)

*Critchlow & Critchlow* and *T. D. Lewis,* all of Salt Lake City, for appellant.

*E. A. Rogers* and *H. L. Mulliner,* both of Salt Lake City, for respondent.

STRAUP, C. J.

The appellant, the plaintiff below, was granted a decree of divorce against the defendant, her husband on the ground of cruelty. They had one child ten months of age at the time of the trial. The custody of it was awarded the plaintiff. She appeals on the ground that the court failed to make an adequate allowance for the support of herself and of the child. The whole record including a bill of exceptions of the divorce proceedings is brought up.

The parties were married in 1929. At the time of the trial she was about 38, he about 53. According to the findings, of which no complaint is made, the cruel treatment was of an aggravated character causing the plaintiff bodily injury and great mental distress. The cause was tried in 1931 and findings made and a decree rendered in June of that year. The findings show that the defendant was able-bodied and at the time of the trial and for a number of years prior thereto was regularly employed at Salt Lake City, Utah, as district manager of a large manufacturer of soap and toilet articles and was receiving $400 a month, a bonus on commissions based on net profits, which bonus in the year 1929 paid him was $2,800, in 1930 $1,700; that his employment required him to be absent from Salt Lake City about one-third of the time, but when so absent all of his expenses were paid by the company; that the rest of the time he was engaged in the office where he had charge of the business of the district and of sales agents; that he was the owner of an improved 80-acre farm in Nebraska, a 100-acre ranch in Wyoming, and a farm of about 150 acres in Millard county, Utah; 45 shares of preferred stock of the company of a market value in excess of $4,500; that he carried life insurance with several insurance companies in the aggregate of $15,000 or more, the beneficiary of all of which was the defendant's son by a former marriage who was married and employed

with the same company as the defendant; that all of the property of the defendant was encumbered, but the amount of the incumbrances was not found, nor was there any finding made as to the value of any of the property, except the 45 shares of the preferred stock, but a finding was made that the value thereof was in excess of all the debts and obligations of the defendant, but to what extent, was not found.

The court further found that the plaintiff was in "very poor health," that she was unable to support herself or the child, that she was in need of a surgical operation and medical treatment which approximately would cost $260; that during the marriage relation the parties lived in an apartment, during which time the defendant purchased furniture and furnishings therefor, without finding the amount or value thereof, but that "a considerable part of the furniture" was purchased by the defendant under title retaining notes upon which there remained a balance unpaid, but no finding was made as to the amount thereof, nor as to the value of the furniture; that pursuant to an interlocutory order, $75 was paid by the defendant as temporary counsel fees for the plaintiff and at the trial the court made an additional allowance of $100 for such purpose, but counsel for the plaintiff waived such additional fees on the condition that such amount, or whatever allowance the court otherwise might make, be added to the amount allowed the plaintiff as alimony and support of the minor child.

Upon such findings, conclusions were made and a decree rendered giving the plaintiff no right, title, or interest whatever in or to any of the property of the defendant, but awarded her $75 a month for the support of herself and of the minor child; and because of the waiver of the additional counsel fees, the court required the defendant to pay an additional amount of $10 a month for a period of ten months for the support of the plaintiff and of the minor child. The court further awarded the furniture to the plain-

tiff requiring the defendant to pay the unpaid installments due and as they become due on the purchase price, required the defendant to pay "all family bills" incurred during the marriage and remaining unpaid and to pay the further sum of $260 for surgical operation and medical treatment of the plaintiff.

The appeal is on the ground that the allowance of $75 a month is inadequate and inequitable. While the court did not find the value of the real estate owned by the defendant, yet evidence was given to show that the assessed value of the Nebraska farm was about $9,600 on which the defendant claimed there was a mortgage of $6,000, but there was some question as to whether the amount of the mortgage was that amount or only $4,000; that the appraised value for purposes of taxation of the Wyoming ranch was $4,569, but the defendant testified there was a mortgage on that ranch amounting to $4,500, the plaintiff contending that the ranch was of the value of $9,000 and a mortgage thereon of a less amount; that the Utah farm consisting of 155 acres was of no substantial value and that there was a mortgage thereon of $1,200 but no interest or any part of the principal had been paid for more than seven years; and that the farm was, as testified to by the defendant, practically abandoned.

It further was shown that one of the insurance policies amounting to $5,000 was paid up and that the premiums of another policy, the amount of which was not stated, were regularly paid since 1914. The defendant testified that the regular annual premiums on his insurance policies amounted to about $520.50; that the annual taxes on the real estate and interest on the mortgages and interest upon notes held against him amounted to $1,206, or a total annual outlay of $1,726.50, premiums on his life insurance and taxes and interest; that the unpaid installments of the furniture amounted to about $574 and the unpaid family bills about $326. He further testified that his annual income from his salary was $4,800; that his yearly bonuses were

from $1,700 to $2,800, but estimated that his bonus for the year 1931, payable in February, 1932, would be only about $700; that he received an annual income from the preferred stock of about $276 and about $110 from the Nebraska farm, but no income from his other real estate, or (estimating his bonus to be only $700) a total income of $5,886. Against that he deducted all premiums to be paid on his life insurance policies and all taxes and interest amounting to $1,726.50 in addition thereto he deducted annual expenses of $1,000 for the use of an automobile in his business, $420 which he testified he paid annually for the support of a son 19 years of age by a former marriage and living with his former wife, $360 which he testified he was required to pay annually on the furniture, $140 a month, or $1,680 a year, for his own personal expenses for room, board, clothing, and laundry, or a total deduction from his income of $5,186.50, leaving a net annual income of only about $700. In other words, the defendant out of his income claimed $140 a month for his own living expenses, $35 a month for his 19 year old son (who, as shown by the record at least a part of the time earned his own living), or a total of $175 a month for himself and his 19 year old son, but was willing to allow the plaintiff who was in poor health and no income of her own only $75 a month for her support and of the ten month old child.

It was shown that the defendant used a Dodge coupe in connection with the business in which he was employed. He testified that he was in Salt Lake City about two-thirds of the time as manager of the office and of the salesmen of the district, and used the automobile in going from place to place of merchants in the city handling goods of the company, but when absent from the city his expenses were paid by the company. He claimed that his expenses in maintaining and operating the automobile were $1,000 a year and testified that it would cost an owner operating and maintaining such an automobile in the city for his own use and pleasure about $1,000 a year.

On the record we are of the opinion that the defendant magnified the expenses of the operation of the automobile and minimized the future estimates of his commissions. He further claimed the right to deduct from his income a sufficient amount to replenish and maintain his own personal estate, both real and personal, in or to which the plaintiff was given no right, title, or interest, and to keep up the premiums and protect the policies of his life insurance of $15,000 in all of which his married son by a former marriage was the sole beneficiary and in or to which the plaintiff nor the minor child was given any right, title, or interest. The defendant further contended that he was indebted in the sum of $6,000 for water shares purchased from the Sevier Land & Water Company for which amount he had given his note to that company prior to 1923, that no part of the principal or interest had been paid, but further testified that no water was delivered to him since 1923 or 1924; that the company had become insolvent and went into the hands of a receiver and that all the assets of the company had been foreclosed and sold; that no demand for more than seven years had been made on him for payment of either the principal or interest and that the company had become defunct; still the defendant claimed that, "I will certainly have to pay them (the notes) sometime," notwithstanding no water was delivered to him for seven or eight years and the company unable to deliver any.

On the record it is quite apparent that the defendant magnified his liabilities, minimized the value of his possessions and of his income, manifested a paramount personal interest and welfare in himself and in his grown-up children by his former marriage, and by his testimony manifested a rather bitter and hostile feeling toward the plaintiff; berated her for becoming pregnant with the minor child and urged her to have an abortion committed; locked the plaintiff and the minor child out of the apartment where the parties lived and removed the furniture and

stored it in a warehouse under an assumed name, took the linen and dishes and other furnishings to the residence of his married son, and when, by an interlocutory order, he was required to restore the furnishings and furniture to the plaintiff, he at the time of the trial had failed to do so, but his counsel in open court stated for him that the furniture would be returned in obedience to the order.

In view of the findings of the trial court that for more than a year before the commencement of the action "the defendant had treated the plaintiff in a cruel manner to the extent of causing her bodily injury and great mental distress, that during all of such period the defendant had been grossly intemperate in the use of intoxicating liquor and on numerous occasions during such period while intoxicated and also at other times called the plaintiff vile and filthy names, inflicted bodily injuries upon her and in the night time locked her out of the apartment in which they were residing"; that the plaintiff was "in very poor health" and had no income of her own or means of support, and in view that the plaintiff was given no right, title, or interest whatever in the estate of the defendant or in the insurance policies maintained by him, that the preferred stock held by him was of the value of $4,500, his regular salary $400 a month, and that he received an annual bonus of from $1,700 to $2,800, we are of the opinion that the allowance of $75 a month for the support of plaintiff and her child was inadequate and that the allowance should be increased to $135 a month to relate back to the time the decree was rendered and entered. In other particulars the decree as rendered and entered shall stand. The defendant is required to pay the taxable costs on the appeal. Heretofore, we, on application of counsel for the plaintiff, allowed her $100 temporary counsel fees on the appeal which now is increased by allowing a further sum of $50 counsel fees for such purpose. In accordance therewith the case is remanded to the court below with directions to enter judgment in the cause as indicated.

In view of observations made concerning the power and function of this court on a review of equity cases on appeal on questions of both law and fact, we need only refer to prior decisions of this court on the subject. *Jensen* v. *Howell,* 75 Utah 64, 282 P. 1034; *Dahlberg* v. *Dahlberg,* 77 Utah 157, 292 P. 214; *Corey* v. *Roberts* (Utah) 25 P. (2d) 940; *Little* v. *Stringfellow,* 46 Utah 576, 151 P. 347; and other cases there cited. The case in hand was considered in harmony with the rule announced in such cases, which rule is too firmly established in this jurisdiction to now be departed from.

ELIAS HANSEN, FOLLAND, and EPHRAIM HANSON, JJ., concur.

PRATT, District Judge.

I concur in the result of the prevailing opinion. After setting out the facts in the case and referring to some of the lower court's findings, the conclusion is reached that the lower court's allowance is inadequate. I agree that the allowance fixed by this Supreme Court is an equitable one and should be the ultimate decision of the case; but I wonder if, under the circumstances of this case, we are concerned with the conclusion reached by the lower court? Let me illustrate:

Step for the moment away from the courts. Three friends are standing upon a corner. John asks Fred: "What is your opinion of the height of that building over there?" Fred answers: "Two hundred feet." John turns to William and asks: "Is Fred's opinion a reasonable one?" Mind you, he does not ask William for the latter's opinion of the height of the building. William hesitates to answer. He is drawn between two desires: One to answer, "No," because in his opinion the building is 195 feet high; the other to answer, "Yes," because, though his own opinion is different from Fred's the latter's is not so obviously far afield of the fact that there is little likelihood of reasonable men generally

agreeing with him. William is fair in the matter and finally answers, "Yes."

That we may have a picture of the building in our mind's eye, let us assume that by actual measurement it is 198 feet high. Suppose Fred's answer had been 10 feet. Obviously there would have been something wrong—possibly bad eyesight or an inability to judge heights—maybe some other cause. William would very promptly have answered, "No."

Return now to a case in court. Assume it to be in divorce. The litigants ask the lower court: "What is a reasonable sum to allow the wife under these facts?" Assume "these facts" to be: The wife has no income or property; the husband has no property but earns $100 per month. The lower court answers: "$35.00 per month." The litigants turn to the Supreme Court and ask: "Is the lower court's allowance a reasonable one?" Suppose the Supreme Court, had it been sitting as the trial judge in the case, would have concluded that $30 per month, or $40 per month, was a reasonable allowance—does such fact justify an answer of "No" to the question asked? Remember, the Supreme Court is reviewing a lower court's decision, it is not being asked its opinion as if it were hearing the trial of the case initially. Should not the Supreme Court do as did William—reason it out as did he? Suppose the lower court's answer had been $95 per month. Does this not compare with the 10-foot estimate of the 198-foot building?

But what about these principles which have been so frequently laid down by this Supreme Court as governing the review of equity cases on appeal? They are in effect this: In an equity case where the findings are based upon conflicting evidence the lower court's findings must stand unless the Supreme Court is of the opinion that those findings are against the clear preponderance of the evidence; also, a review of an equity case is analogous to a trial de novo on the record giving due allowance to the fact that the lower court had better opportunity to observe the demeanor of the witnesses and determine their credibility and the weight to

be given their testimony. Are these principles in conflict with what has been stated above about "reasonableness"? Let's look into this question a moment.

The assumption was made that the three friends were standing where they could see the building; the assumption was made that the financial status of the parties in the divorce case was as set out. Suppose Fred was requested to give his estimate upon a building he could not see, but which was described to him. We all know that the trial judge does not live the lives of the parties, so his determination of what their financial status is must be from testimony given him by the witnesses. If Fred gets the wrong idea of the building in mind we should, of course, expect that his estimate would be erroneous barring mere coincidence. The same is true of the trial judge's conclusion as to a reasonable allowance. In the court case the trial judge is required to describe the "building" upon which he bases his "estimate": This "description" we find in his findings of fact upon matters testified to by the witnesses. To determine whether or not he has the right "building" in mind we examine the "description" (record) given him. If he finds with the preponderance of the evidence, we say in effect that he has the right "building" in mind. If it be a question of which of two witnesses shall be believed, we bow to his superior opportunities for determining where the truth lies. Thus do we have the preponderance of the evidence rule—the analogy to the trial de novo on the record —the due consideration of the personal contact with the witnesses. And yet, notwithstanding the application of these oft applied rules—nothwithstanding he has the right "building" in mind, he may make an erroneous "estimate," not because of something we may see in the record, but because of a failure to exercise proper judgment, a misapplication of existing facts found to be true.

"Reasonable" does not imply comparison with one particular opinion. We may not set up our own opinion as the ideal and determine the error of another by his de-

parture from that ideal. We should conceive the limitations of the variance in opinions of reasonable men generally upon the subject, and then ascertain whether the opinion in question is within or without those limitations. When a conclusion is so obviously far afield of the fact that there is little likelihood of reasonable men generally agreeing with it, in all fairness it should be deemed without those limitations.

In the prevailing opinion of the case at bar—the Sipherd Case—the lower court's allowance is said to be inadequate by reason of certain findings of fact, which are set out and some of which go more to the granting of the divorce than the question of alimony. The inference is that the error lies in a faulty conclusion from proper premises, rather than faulty premises. I disagree with this. There are several blanks in the findings, such as the amount of the automobile expense, and the amount of the indebtedness for furniture. Certain items of income and expense are not mentioned. By this I do not mean to say that the findings must include evidentiary facts—not at all; but as worded, they do not inform us whether or not these items received consideration in the amounts shown by the evidence. Thus we cannot say that the lower court had the right "building" in mind. In fact, if the findings are incomplete and not merely against the preponderance of the evidence, we cannot say what "building" the lower court had in mind—right or wrong. Under such circumstances the conclusion of the lower court is immaterial. Thus the appellate court is forced to indicate what the findings shall be and arrive at its own conclusion in the matter.

Finally, why all this distinction? Simply this: If adhered to, many cases that now appear confusing by reason of the small margin of change between the allowance of the lower court and that of the appellate court are clarified by showing that the error committed by the lower court was not an erroneous conclusion from proper premises, but a conclusion, in reality, upon improper premises (see *Dahlberg* v. *Dahlberg*, 77 Utah 157, 292 P. 214)—the proximity of the

appellate court's allowance to that of the lower court under such latter circumstances is immaterial; but that proximity in cases where the lower court's premises are found to be correct, is indicative of either one of two things: A failure on the part of the appellate court to correct an unreasonable conclusion, even though they change it some—such as raising alimony from $10 per month to $20 per month, which, if the $10 is unreasonable, the correction does not seem to remedy much; or a change in the amount of alimony without regard to error in the lower court just because the appellate court desires to do so. Both alternatives are error on the part of the Supreme Court.

MOFFAT, J., did not participate herein.